HONORABLE JOHN D. ROBERTS

WILLIAM C. BROBERG
Attorney for Julio Reyes
Law Office of William Broberg
P.O. Box 78562
Seattle, WA  98178
(206)264-1992 -  voice
(206)264-0406 – fax
williamb@wbroberglaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>vs.<br><br>JULIO REYES,<br><br>          Defendant-movant. | Case No.  A02-0102 CR (HRH)<br><br>SUMMATION OF DEFENDANT-MOVANT |

Introduction

The Court held an evidentiary hearing in this matter on January 10, 2006.  The Court heard evidence from two witnesses, the defendant-movant and his previous attorney, Herman Walker.  At the hearing, the Court

granted leave for the parties to exchange simultaneous summations on January 27, 2006 after receiving the transcript[1], and, simultaneous replies, five working days later.  See Transcript of Evidentiary hearing, hereinafter EH[2] at p. 65.  The defendant-movant respectfully offers this summation.

## Summation

Before reaching what this case is about; it is important to realize what this case is not about.  It is not a case about a lawyer who falls asleep during a capital trial and the client gets the death penalty.  See e.g. Burdine v. Johnson, 262 F.3d 336 (5th Cir. 2001) (en banc) cert. denied sub nom Cockrell v. Burdine, 122 S.Ct. 2347 (2002).  It is also not a case where a lawyer has some malevolent wish for his client to do more time than he should.  It is likewise not a case where the lawyer did nothing correctly;

---

[1] Counsel did not receive the transcript until the morning of Thursday, January 26th, 2006 and this submission is accompanied by a motion for a three day extension of time to file this summation and accompanying proposed findings of fact and conclusions of law.

[2] The following abbreviations are used throughout.  **App.** refers to the Appendix that counsel filed on August 29, 2005, containing various documents including the change of plea and sentencing transcripts.  At the evidentiary hearing the Court inquired as to what docket number it was filed under.  The docket in this matter, at dkt. #322, and in parentheses there references "…a bound document…" that was forwarded to "MJ."  Counsel believes that this notation must be the bound Appendix.  Counsel will file it again as a PDF document excluding the presentence report to comply with the local rule.  See D. Ak. L CrR 32.2.  **EH** refers to the Transcript of the Evidenitary Hearing.

indeed, in this case, some of Mr. Walker's representation was actually superb.[3] It is finally not a case that requires the parties or the Court to divine, and pass on, Mr. Walker's intentions, because, there is no need, his intentions were good. That fact should be considered undisputed.

It is a case, however, of garden variety inadvertence, too much work, and lack of legal knowledge and the predictable consequences of the same. A defense lawyer who brilliantly fights a lengthy trial, and brilliantly briefs each issue, and brilliantly makes a perfect appellate record, is still, in the eyes of the law, constitutionally deficient when that same lawyer files a notice of appeal late, or does not file one. See e.g. United States v. Sandoval-Lopez, ___F.3d___ (9th Cir. June 6, 2005) (if requested by client and counsel does not file a notice of appeal, counsel *per se* ineffective). So, too, is the lawyer that attempts to advise his client about the penalties for pleading guilty and the sentencing options available to the Court, but cannot, because he does not know what they are.

---

[3] One thing should not escape mention. Mr. Walker's unprepared, "on the fly" cross-examination of the case agent, was excellent. See App. 19-23. Mr. Walker, at that point, had only the government's sentencing memorandum, as his only clue as to what the government felt that Mr. Reyes had not told them and Mr. Walker, through cross-examination showed how detail-oriented, and relatively minor the government's position that Mr. Reyes had not been fully forthcoming actually was, compared to Mr. Reyes's much larger admissions regarding Altagracia Perdomo's cocaine conspiracy and his involvement in it from his debriefing.

<u>Mr. Walker does not, and did not, understand the applicable law relating to the "safety valve" (18 U.S.C. 3553(f))</u>

In many ways, this case can be resolved by looking at one question, and one answer from the evidentiary hearing:

* * *

Q: [Broberg]  Do you recall having any specific conver- -- well, first of all, let me ask you this.  Can you explain the operation of – what's the safety valve?

A: [ Hermann Walker] Well, if he [Reyes] – was debriefed by the government and *they felt satisfied* with whatever he told them, *they could make application* for a reduction in sentence.

* * *

EH at pp. 38-39 (beginning at ln. 25, p. 38  - ln. 5, p. 39).

There is no other way to say this:  Mr. Walker does not know what the safety valve is and how it operates.  <u>Compare id</u>. <u>with</u> 18 U.S.C. 3553(f) (5) (not dependent on government's assessment of usefulness of the information or government's satisfaction); <u>United States v. Sherpa</u>, 110 F.3d 656 (9th Cir. 1996) (relief even available to those who take a case to trial); <u>United States v. Shrestha</u>, 86 F.3d 935 (9th Cir. 1996) (assuming that acceptance of responsibility is a higher threshold than safety valve relief and holding that the two are not co-terminous); <u>United States v. Rojas-Madrigal</u>, ___F.3d__ (8th Cir. 2003)(district judge does not abuse discretion in continuing a sentencing on the day of the proceeding to allow defendant another

opportunity to qualify for safety valve relief); United States v. Montanez, 82 F.3d 520 (1st Cir. 1996) (no requirement of physical in-person "de-briefing" a letter can suffice).

But we do not have to be satisfied with the one question and one answer, admittedly taken out of context, to properly conclude that Mr. Walker does not understand the safety valve. We have his other answers, which, indisputably confirm, that the above was not a misstatement, or that he did not understand the question. Indeed, we have the next clarifying question and his answer to it:

> Q: Okay. So the government makes the application for the safety valve?
>
> A: Yes.

EH at p. 39, lns. 6-8. We also have the government's inability to elicit a contrary answer on cross examination, even after telling Mr. Walker, in a question, they withdrew, how he was wrong on direct. See id. at p. 48, ln. 23-end of page – p. 49, ln. 16. And, of course, none of this happens in a vacuum, it comes after, and on top of, a fully developed record, replete with pleadings, transcripts from Court hearings, and a known outcome, from the proceedings both pre-plea and post-plea, and at sentencing.

The conclusion that Mr. Walker does not know how the safety valve operates is confirmed over and over by reference to other parts of the record in this proceeding. First, there is the transcript of the change of plea:

* * *

MR. WALKER:  No, Your Honor.  **I didn't realize that the –**

THE COURT:  --need for us to do at this point?

MR. WALKER:  **--safety valve was still available to me.**  I will have further discussions with my client regarding that.

THE COURT:  I read – I read this plea agreement to say that there is still that possibility.

MR. WALKER:  **Okay.  And I will have those discussions with my client.**[4]

* * *

---

[4] Assistant United States Attorney Bradley is the one that injected the safety valve discussion into the Change of Plea hearing. See Transcript of Change of Plea, on file with the Court, at pp. 23-25.  He claimed there that he wanted to make sure that Mr. Reyes did not come back and claim ineffective assistance of counsel, and wanted, apparently, to make a good record. Id. at p.23 ("…[a] stitch in time saves nine…").  Either Mr. Bradley is a psychic and can foretell future events, or, he had his own first hand observations and assessments from plea negotiations,of Mr. Walker's understanding of the sentencing options that led him to be concerned and to attempt to make that record.  It is, ironic, looking backward, that Mr. Bradley's effort to inoculate his office's conviction from collateral attack, may very well have occasioned strong evidence in support of such an attack.  Mr. Walker's admission, on the record there, that he thought his opportunity to qualify for the safety valve had expired and that he did not know that the safety valve was available until sentencing is quite probative of the state of Mr. Walker's knowledge at a relevant point.

See Transcript of Change of Plea, on file with the Court at pp. 24-25; cited at Defendant-Movant's Memorandum of Law in Support (Docket #335) at pp. 7-8.

Second, is Mr. Walker's sentencing memorandum. See App. 49 – 54. Third, is Mr. Walker arguing for an illegal sentence for his client, oblivious to the fact that a mandatory minimum was involved and oblivious to how to get below it, even though Judge Holland had pointed it out to him at the beginning of proceeding. See App. 5 (Judge Holland: "…adjustments to the base offense level here are – seem to be a moot point in light of the fact that we have over the threshold amount of cocaine base here for the statutory mandatory minimum sentence."; 7-9(Walker argument re: adjustment of offense level based on minor role and totality of the circumstances) 23-24 (Walker more argument same topics).

The record and the additional evidence taken at the evidentiary hearing support one conclusion regarding the state of Mr. Walker's knowledge about the safety valve, both pre-plea, post-plea and currently: Mr. Walker does not understand how the safety valve works. This lack of knowledge, coupled with his failure to seek that knowledge resulted in the outcome in this proceeding.

<u>Because Mr. Walker does not understand the safety valve now, and did not then, his advice, if any, to his client regarding the safety valve was outside reasonably competent assistance.</u>

It cannot reasonably be in dispute that at the time Julio Reyes signed the plea agreement, that Mr. Walker could have explained "the safety valve" to him. The evidence and the record show that Mr. Walker did not, actually explain this to Mr. Reyes, and, in fact, could not have. See EH p. 52, lns. 22-end – p. 53, lns. 1-17 (Walker testifying to no specific recollection of anything he said to Reyes when he had his interpreter read the plea agreement to Mr. Reyes, nor any memory of anything, or any question, that Mr. Reyes asked him.).

The additional evidence from the evidentiary hearing on this point establishes that an interpreter read the plea agreement in Spanish to Mr. Reyes. Id. This was the first time the interpreter had ever dealt with a defendant in Federal Court and was not a professional interpreter. EH p.33, lns. 20-24. Assuming that Mr. Walker, has a basis of knowledge, the evidence established that the interpreter may have worked before in state court proceedings. EH p. 55, lns. 15-16. Mr. Walker, at different times, often felt that Mr. Reyes did not understand him, what was happening, and what the interpreter was saying. Mr. Walker believes and believed that Mr. Reyes would have to <u>physically</u> be debriefed <u>in person</u> to qualify under his

understanding of what the "safety valve" is.  Mr. Reyes could have written a letter to supplement his previous statement if directed to.  He was not, nor is any defendant, for purposes of "safety valve" relief, required to "go to the table", and *answer questions*; they are only required to "*...provide information...*" to the government, no more, no less.  18 U.S.C. 3553(f)(5).  Indeed, a defendant is not required to provide the information to anyone at the FBI, the DEA, or the U.S. Attorney's office, in particular, or, by the statute's plain terms and readily accessible case law, in any particular modality.

     Mr. Walker's lack of knowledge of the law on this point rendered any advice he may have attempted to give far outside the wide range of competent legal assistance contemplated by the first prong of <u>Strickland</u>.

<u>Mr. Walker, knowing that the government had inculpatory information from other co-defendants about his client, did not, in any way, seek to obtain that information; such failure is far outside of the wide range of competent legal assistance, contemplatied by Strickland.</u>

     This section is, really, an extension of the former one.  Mr. Walker knew from well before Mr. Reyes's debriefing that other co-defendants had been de-briefed.  <u>See</u> EH p. 38, lns. 1-10, lns.  At the evidentiary hearing he identified this as the main reason he felt that Mr. Reyes needed to be debriefed himself.  <u>See id</u>.  Walker also knew that the government was not satisfied with what Reyes told them.  It is not as challenging, perhaps, as

finding a needle in a haystack to tease out where the government's feeling was coming from—it was the co-defendants—that Walker knew had already talked with the government. Of course, this was confirmed in the government's later sentencing memorandum, dkt. #167. The result of this proceeding could easily have resulted in a more favorable outcome to Mr. Reyes if Mr. Walker understood the basic underlying law, and simply asked Mr. Reyes about the inconsistencies, alleged by the government, in their sentencing memorandum. Indeed, if Mr. Walker simply took even <u>the government's own sentencing memorandum</u> to the jail with him and said, "Look, the government thinks you didn't tell them everything about traveling to Fairbanks, AK with Altagracia. Have you ever gone to Fairbanks, AK with Altagracia?", and so, it is reasonably probable that he would have answered "yes" and said what he knew. So, if Mr. Walker would have asked Mr. Reyes specifically about the deficiencies identified to him for the first time in the government's sentencing memorandum, typed up Reyes's answers and had Mr. Reyes sign the answers and sent it off or faxed it off to the government, again; it is reasonably probable that Mr. Reyes would have received the "safety valve" relief. If Mr. Walker knew and understood, what was required of his client to qualify and, of course, it was not dependent upon the government making an application as he

believed or, actually, even on his client being "debriefed" again, or "going to the table"; it is reasonably probable that Mr. Reyes would have qualified.

Instead of doing what would be relatively easy if one understood the law and the requirements, Mr. Walker essentially was telling Mr. Reyes that he really should go be interrogated again. But, if you are Mr. Reyes and what you said in your responses to the government's questions before was true, but unknown to you why, the government felt not complete, and your lawyer had said then that if you "cooperate"[5] you could get less than 18 months, and you do, in your estimation, cooperate, and the next thing you know there is an interpreter, a long document and that same lawyer saying to you in the jail, "I don't remember saying 18 months, and I know this document says 60, but it is really 36-48, that's what I can do: you would be rightfully scared about "cooperating" again, because every time you do the estimate of sentence gets worse, not better.[6]

---

[5] It is less than intuitive for the average person, but especially for a non-citizen, with very limited education, and probably even to some lawyers, that "cooperate" can mean: talk, testify, talk some more and then, even if you have done all of that, you are still not guaranteed, in any way, that the government will make a substantial assistance motion, even if you have literally "cooperated".

[6] It is a very interesting point about Mr. Reyes's testimony regarding Mr. Walker's estimates of what he "could get" for Mr. Reyes. Essentially, Mr. Reyes testified that in the very beginning Walker said he could be looking at 10-15 years on the delivery and conspiracy charges. EH p. 9; ln. 14. Then

Reyes testified that because of that Walker told him he needed to "cooperate" and that if he did, he could get less than "18 months." EH p.10; lns. 10-13.  It is important to look at the exact words that Mr. Reyes testified to regarding what the lawyer said he "could get."  Mr. Barkeley, rather than asking Mr. Walker he had ever *said* that Mr. Reyes "could get 18 months or less" instead decided to ask Walker if he had ever **"*promised*"** Mr. Reyes 18 months or less, and Walker said he did not and did not **"*promise*"** anything.  Counsel is not aware of any lawyer that would ever "promise" any particular sentence and Mr. Walker did not do that likely.  But, Mr. Walker's testimony does not support the conclusion that 18 months was never *discussed* at all, rather Walker's testimony is what it appears to be, Walker claims to never have "promise[d]" Mr. Reyes that he would get eighteen months.

"18" months, however, is an intriguing number for two reasons, both of which strongly suggest that Mr. Reyes was told what he said he was told.

First, what is important here is whether an estimate of an 18 month or less sentence for someone, the government would have to agree was only marginally involved in a much, much larger business, and the only direct evidence of his involvement was the delivery of a very small amount of cocaine would be reasonable.  It would.  Especially, if the government had been talking about a sentence in that range, and the evidence here is there was some kind of talk or agreement about a sentence between Walker and the government.  See EH p. 58, lns. 1-6.  If Reyes had happened to be a bigger fish than the minnow he proved to be, and actually had useful information for the government, an estimate of an eighteen month sentence, for substantial assistance, with a plea to the lesser delivery charge of 27.5 grams, is a fair and reasonable estimate considering Reyes's actual involvement and very consistent with what the indisputably more culpable co-defendants actually received for their substantial assistance and pleas.  Indeed, considering the sentence of the drug courier, Ms. Pagaio, who moved kilo upon kilo upon kilo across state lines from California to Alaska and that of Nayade Perez, Perdomo's daughter, who indisputably sold lots and lots and lots of drugs, starting at 18 months for Reyes as an inducement to talk, to see if he could offer someone bigger up, is quite realistic based on the available evidence and the outcomes of the other related cases.  The problem that Mr. Reyes has is he didn't have anything or anybody to offer.  And, remember, this estimate, according to Mr. Reyes, is made when

Lawyers often use the word "debriefed" and when we do so it is euphemistic, of course, because what is really happening is essentially an <u>interrogation</u>, and it really is an interrogation in the legal sense too which is why use immunity is part and parcel of the practice. The testimony about what happened at the first debriefing is clear. Mr. Reyes answered the government's questions truthfully. The government has offered no evidence that anything other occurred. But, make no mistake, in even the gentlest debriefing the government is asking the questions and the defendant is answering. The government has not offered one question or one answer from that debriefing in this case. Mr. Walker certainly did not subscribe to

---

Walker is going for a much, much bigger prize than the limited relief of the safety valve, he is going for substantial assistance, where the effective sentencing range becomes 0 through the guideline range if the government makes the 5K1.1 motion and the motion pursuant to 18 U.S.C. 3553(g) and it is granted. <u>See id</u>. "sentence without regard to any statutory minimum". That, of course, is a far cry from the much more limited reduction that the the "safety valve" can facilitate.

Second, it is additionally extremely likely that Mr. Reyes was told something about 18 months because that is exactly in the middle of his guideline range, if it was calculated without regard to a mandatory minimum on the charge he ultimately plead to. <u>See</u> 18 U.S.C. 3553(g); U.S.S.G. Section 2D1.1 (2003 Guideline Manual) (using drug quantity table yields offense level of 14 for delivery of 37.5 grams of cocaine, and with a criminal history category of 1, there is a presumptive range of 15-21 months, before adjustment for acceptance of responsibility. Note that the government has not anywhere in this collateral proceeding ever claimed that 18 months was not discussed and they have known that Mr. Reyes has contended that his lawyer told him 18 months before the de-briefing since April of 2005. See Declaration of Julio Reyes, dkt. #

Mr. Barkeley's characterization of what occurred at the debriefing and Mr. Barkeley's characterization is, of course, not evidence. EH p. 44, lns. 8-10. So, we heard from two people who were there, Walker and Mr. Reyes. The government decided not to put on any evidence on this point.

Of course, this argument could go on and on. But, the evidentiary hearing made one thing clear. Mr. Walker believes that the "safety valve" is dependent upon the government making the application to the Court. Additionally, and fully consistent with his lack of knowledge regarding the "safety valve" Mr. Walker testified that he had not read the plea agreement. See EH p. 45; lns. 3-9. To have the interpreter read it to Mr. Reyes in Spanish, does not mean that Mr. Walker ever had to read it himself. Indeed, if he had read it, then why would it come as a surprise to him that the safety valve was still available when he was told that at the change of plea hearing, since it was written right in the plea agreement?

In sum, Mr. Walker's knowledge of applicable law and the contents of and effect of the plea agreement, support a finding that Mr. Walker rendered legal assistance outside the acceptable range of competence.

<u>Mr. Walker's lack of knowledge of the basic legal concepts and other insufficient performance, and Judge Holland's comments about the same, and Mr. Reyes's testimony regarding what he would have done had he have been minimally advised by a lawyer who understood the applicable sentencing law demonstrate a reasonable probability that the result of sentencing would be different.</u>

The Court has previously mentioned being aware of Judge Holland's comments at the change of plea hearing and at sentencing and these are fully set forth in our Memorandum of Law in Support of our underlying 2255 motion.  It is clear, that Judge Holland, upon appropriate application, and qualification would have granted Mr. Reyes "safety valve" relief, and actually it seemed Judge Holland felt that the result in this case was anomalous that Mr. Reyes did not receive this relief.  The evidence taken herein shows why:  Mr. Reyes lawyer does not understand the safety valve and its application.  Of course, using an interpreter and delegating to her the lawyer's task of explaining a plea agreement, not doing any legal research until right before sentencing, and other various deficiencies were identified throughout.  But, clearly showing through it all are Mr. Walker's words about what the "safety valve" is and how it operates:

* * *

>Q: [Broberg]  Do you recall having any specific conver- -- well, first of all, let me ask you this. Can you explain the operation of – what's the safety valve?
>
>A: [ Hermann Walker] Well, if he [Reyes] – was debriefed by the government and ***they felt satisfied*** with whatever he told them, ***they could make application*** for a reduction in sentence.

* * *

EH at pp. 38-39 (beginning at ln. 25, p. 38  - ln. 5, p. 39).

Mr. Walker, unfortunately, could not have been clearer. He does not understand the "safety valve." As such, this deficiency and others, create a reasonable probability that the result in Mr. Reyes case would be different upon the provision of satisfactory counsel with a sufficient understanding of applicable law.

For the foregoing reasons, and those outlined in our Memorandum of Law in Support and the various parts of the record below, the defendant-movant respectfully requests and prays that this Court report to the district judge that Mr. Reyes's first amended 2255 motion be granted and a resentencing ordered.

DATED this 1st day of February, 2006.

/s  William Broberg
WILLIAM BROBERG
ATTORNEY FOR JULIO REYES
P.O. BOX 78562
SEATTLE, WA  98178
(206)264-1992 – voice
(206)264-0406 – fax
williamb@wbroberglaw.com
WSBA# 29319

/
/
/
/

## Certificate of Service

I hereby certify that on February 1, 2006, a copy of the foregoing summation was served electronically on the attorney for the United States in this matter.

s/ William Broberg