IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
UNITED STATES OF AMERICA,         )
                                  )
                    Plaintiff,    )
                                  )
          vs.                     )
                                  )
ALTAGRACIA ESTHER PERDOMO, et al.,)
                                  )
                    Defendants.   )
——————————————————————————————————)
                                  )     No. 3:02cr0102HRH
This Order Pertains to:           )
                                  )
JULIO REYES            (D-02)     )
——————————————————————————————————)
```

O R D E R

Motion to Vacate

Defendant Julio Reyes moves to vacate his sentence pursuant to 28 U.S.C. § 2255.[1]  The motion was opposed by the Government.  An evidentiary hearing was conducted before the assigned United States magistrate judge, who, after receiving written submissions from the parties,[2] entered an initial report and recommendation.[3]  Provision was made for the filing of objections, and defendant timely filed objections which were duly

---

[1]    Clerk's Docket No. 309.

[2]    Clerk's Docket Nos. 350, 353 & 355.

[3]    Clerk's Docket No. 356.

considered by the magistrate judge. A final report and recommendation has now been entered, proposing that the motion to vacate be denied.[4] The court has fully reviewed the record in this matter, with particular attention to the plea agreement that was entered into between the Government and defendant,[5] the transcript of defendant's sentencing hearing,[6] and the transcript of the evidentiary hearing conducted by the magistrate judge.[7] Based upon this review, the court adopts as its own the findings and conclusions of the magistrate judge as set forth in the initial report and recommendation and expanded by the final report and recommendation. The following summarizes this court's analysis of the instant motion and, to some degree, supplements the findings and conclusions of the magistrate judge supporting denial of the motion to vacate.

Although it is apparent from the transcript of the evidentiary hearing that defendant has some grasp of colloquial English, it also appears that his primary language is Spanish. Recognizing this, defendant's plea counsel[8] at all appropriate times secured the assistance of a Spanish-speaking interpreter.

---

[4]    Clerk's Docket No. 359.

[5]    Appendix of Relevant Documents No. 1 at 55.

[6]    Appendix of Relevant Documents No. 1.

[7]    Clerk's Docket No. 348.

[8]    Herein the court refers to counsel assisting the defendant up to and including the entry of judgment as "plea counsel". Defendant is represented in these post-judgment proceedings by substitute counsel.

Especially in the objections to the initial report and recommendation, an issue was raised regarding the adequacy of interpreter services obtained by plea counsel for out-of-court translation services. The court finds that the interpreter engaged by plea counsel to assist in communicating with defendant was experienced in translating English to Spanish for court proceedings. She had provided translation services for the Alaska Court System.[9] Moreover, the court finds that in his out-of-court dealings with defendant, plea counsel was attentive to whether or not the defendant appeared to understand what was being discussed.[10] When plea counsel had the feeling that defendant might not understand, he took care to "go over things again and make sure he understood."[11]

Although the change of plea hearing conducted with respect to defendant appears not to have been transcribed, it is the court's practice (and private notes of the same have been retained) to conduct a meticulous review of the plea agreement as a part of a change of plea proceeding. The court always verifies that a defendant is satisfied with the representation that he is receiving, that he knows the range of sentences to which he is exposed under the plea agreement, and to verify that the defendant

---

[9]    Transcript of Proceedings before Magistrate Judge at 55, Clerk's Docket No. 348. This transcript is hereinafter referred to as "TR __".

[10]    TR 34, lns. 5-9.

[11]    TR 34, lns. 10-11.

understands that the court will make its own independent decision as to what sentence a defendant should receive, irrespective of the discussions the defendant may have had with counsel. There has been no suggestion here that the court did not follow that exact practice in this case.

The initial report and recommendation aptly sets forth the applicable standard for the determination of a claim of ineffective assistance of counsel.[12] The court has employed the Strickland standard in making its decision.[13]

The focus of defendant's ineffective assistance of counsel claim is the so-called "safety valve" contained in the guidelines of the United States Sentencing Commission, U.S. Sentencing Guidelines Manual § 5C1.2, which makes provision for the avoidance of an otherwise applicable, mandatory minimum sentence. In order to obtain this benefit, a defendant must meet five specific criteria, the fifth of which is that by the time of the sentencing hearing, a defendant must have made a full disclosure of his involvement in the "offense or offenses that were a part of the same course of conduct or of a common scheme or plan...." U.S. Sentencing Guidelines Manual § 5C1.2(a)(5).

As set forth in much greater detail in the initial report and recommendation, defendant participated in an initial debriefing

---

[12]    Initial Report and Recommendation at 5-7, Clerk's Docket No. 356.

[13]    Strickland v. Washington, 466 U.S. 668 (1984), as well as the subsequent cases set forth by the magistrate judge in the initial report and recommendation.

with law enforcement authorities who became convinced that defendant was not telling all he knew about a moderately expansive drug dealing conspiracy. When confronted with the law enforcement concerns, defendant (for reasons not explained) became apprehensive; and, after further discussion with plea counsel, declined to continue the debriefing. Thereafter, plea negotiations were undertaken, and a plea agreement was reached that set forth a "non-binding estimated sentence range [of] 60 to 71 months."[14]

Important to defendant's claim of ineffective assistance of counsel, the plea agreement in this case contained a rather unusual provision that focused upon the "safety valve" guideline. The agreement expressly provided:

> The Government does not presently believe that the defendant meets the criteria of U.S.S.G. § 5C1.2, the "safety valve" provision, in that he has failed to truthfully provide the government with all information the defendant has concerning the offenses that were part of the same course of conduct with which he is charged. If he does so prior to sentencing, the Government may recommend that the "safety valve" applies.[15]

As did the magistrate judge, the court finds that plea counsel adequately reviewed and discussed with defendant (with the assistance of a translator) the terms of this plea agreement. At the evidentiary hearing, there was testimony on several occasions from the defendant to the effect that he expected a sentence of 18

---

[14]     Appendix of Relevant Documents No. 5, A-55 at A-63.

[15]     Appendix of Relevant Documents No. 5 at A-61 (emphasis in original).

months or less.  The magistrate judge did not believe defendant.
It is the court's view that there may have been early discussions
(prior to plea negotiations) between plea counsel and the defendant
about an 18-month sentence; but, if it was defendant's contention
that he believed and 18-month sentence was still possible at the
time the plea agreement was negotiated, that position is indeed
unbelievable.  By the time of the plea agreement, it had to have
been entirely clear to defendant that he was looking at a 60-month
sentence if he did not cooperate with the Government by answering,
fully and completely, questions regarding the larger conspiracy
with which he and other defendants were charged.  In this regard,
plea counsel explained that:  "[w]hen we went over this plea
agreement with him, I was once again trying to get him to sit back
down at the table so that he could get his safety valve. ...[M]y
whole thing was to try to get him to sit back down at the table.
And he just didn't want to do it."[16]

        Defendant testified, in connection with the plea
agreement and sentencing, that he and plea counsel were hopeful of
a sentence that would be less than 60 months, perhaps in the range
of 36 to 48 months.  At no time did anyone assure defendant that
such a reduced sentence would be available, and the court infers
that such discussions took place in the context of plea counsel's
continuing efforts to convince defendant that it would be in his
best interests to cooperate by giving the Government a fuller

---

[16]     TR 46-47.

explanation of offenses involving the same course of conduct as defendant's offense of conviction.  While stating that it was not his practice to "strong-arm" his clients,[17] plea counsel's goal, without specifically using the words "safety valve" was that, "I wanted him to understand that his sentence was only going to be reduced if we talked to the Government again."[18]  Counsel continued, stating:

> I definitely prepared him for [a five-year sentence] because I was still working on him, trying to get him to talk to the government so he can get the — the lower sentence that we had negotiated with the Government.[19]

In fact, there was no lower sentence "negotiated" with the Government; but, as quoted above, the plea agreement very clearly told the defendant what he needed to do in order to have available the "safety valve" reduction of a 60-month sentence.

Employing the highly deferential review standard of Strickland, the court concludes that plea counsel's performance was not "so deficient that it fell below an objective standard of reasonableness."  Sylva v. Woodward, 279 F.3d 825, 836 (9th Cir. 2002).  While plea counsel's grasp of the technicalities of guideline sentencing may have been weak, the court believes that plea counsel made every reasonable effort to explain the substance of the "safety valve" of U.S.S.G. 5C1.2 to defendant and to prevail

---

[17]    TR 51.

[18]    TR 54.

[19]    TR 58.

upon him to see the wisdom of taking advantage of that provision. The court finds that defendant more probably than not had a good understanding of what he needed to do and why he needed to do it in order to avoid a 60-month sentence, but chose not to. Plea counsel's handling of the "safety valve" issue was not deficient.

The amended petition raises several other issues.[20] Those issues were either subsumed by the "safety valve" issue or not well developed and appear to have been abandoned by the time counsel filed their written summations. Defendant has failed to demonstrate deficient performance by plea counsel which prejudiced the defendant as to these other issues.

The motion to vacate is denied. The clerk of court shall enter judgment dismissing with prejudice defendant Julio Reyes' petition pursuant to 28 U.S.C. § 2255.

In this case, the court declines to enter a certificate of appealability as to any aspect of defendant's motion to vacate. No reasonable judge would conclude that plea counsel's conduct of this case fell below the standard set forth in <u>Strickland</u> and its progeny.

DATED at Anchorage, Alaska, this <u>28th</u> day of June, 2006.


<u>/s/ H. Russel Holland</u>
United States District Judge

---

[20] Plea counsel's familiarity with the application of mandatory minimum sentences and an alleged failure of plea counsel to request a departure if defendant were to stipulate to deportation. Motion to Vacate Sentence at 5-6, Clerk's Docket No. 309.